## OFFUTT et al. *vs.* SCOTT.

[BILL IN EQUITY TO SUBJECT LAND PURCHASED WITH PARTNERSHIP FUNDS, AND IN POSSESSION OF ADMINISTRATOR AND DEVISEES OF DECEASED, TO PAYMENT OF JUDGMENT RECOVERED AGAINST SURVIVING PARTNER ON FIRM INDEBTEDNESS.]

1. *Real estate; when treated as personal property in equity.*—Real estate purchased by a partnership, for partnership purposes, and paid for with partnership funds, as to the creditors of the firm is, in equity, treated as personal property, and will, if necessary, be subjected to the payment of their debts, whether the title be conveyed to the partners by name, or to one of them, or to a third person.

2. *Surviving partner; powers and duties of.*—In case of the death of one partner, the survivor is a trustee for all persons interested in the partnership, for the creditors of the firm, for the representatives of the deceased partner or his heirs, and for himself; and for the purpose of closing up the business of the firm, he is invested with the exclusive right of possession and management of the whole partnership property and business. His trust being to wind up the concern, his powers are commensurate with the trust; hence he may collect, compromise,

Offutt et al. v. Scott.

or otherwise arrange all the debts of the firm, and his receipts, payments, and doings generally, in that behalf, are valid, if honestly done, and within the fair scope and purposes of the trust ; and until the debts of the firm are paid, neither the personal representatives nor the heirs of the deceased partner have any beneficial interest in the partnership property.

3. *Firm, dissolved by death of partner, judgment creditor of ; how and against what may proceed in equity for satisfaction of his debt.*—When a partnership is dissolved by the death of one partner, the only remedy at law against the firm, by the creditors of the firm, is by suit against the survivor ; and when a creditor has exhausted his remedy at law against the firm, by a suit against the survivor prosecuted to a return of an execution " no property found," he may then file his bill in equity to subject the real estate of the partnership to the payment of his debt, and this, whether the possession be in the surviving partner, the personal representative or the heirs of the deceased partner, or any other person who is not a *bona fide* purchaser for valuable consideration and without notice.

4. *Goods received on consignment before death of partner ; duty of survivor as to.*—If goods shipped and consigned to a firm doing a commission business, to be sold on account of the shipper, are received, but before they are sold one of the partners dies, the survivor may sell such goods, and, in such case, the claim of the shipper on account of such sale is properly against the firm, and not against the survivor individually.

5. *Variance between bill and proof ; when should be held immaterial.*—A variance between the statements of the bill and the proof, if not of such a character as to operate as a surprise to the defendants, and the defendants do not appear to be thereby injured, should generally be held to be immaterial.

6. *Purchaser of land bought with partnership assets ; when equity of, superior to that of creditor of partnership to subject for payment of firm debt.* If a surviving partner sell and convey his interest in the real estate belonging to the partnership to a *bona fide* purchaser for valuable consideration, without notice, before a creditor of the firm has acquired a lien on the same by bill filed to subject it to the payment of his debt, the purchaser will hold it against the general equity of the creditors to have it appropriated to the payment of the partnership debts.

APPEAL from Chancery Court of Montgomery.
Heard before Hon. A. W. DILLARD.

The case made by the bill, answers and proof may be stated as follows :

In May, 1860, and prior thereto, a partnership composed of R. H. and his brother W. E. Offutt, did business in the city of Montgomery, Alabama, under the firm name and

style of R. H. & W. E. Offutt. In the month of September, 1860, the firm was dissolved by the death of W. E., who left R. H., the surviving partner, one of his executors. During the existence of the partnership the brothers, who were equal partners, made a purchase as tenants in common of certain valuable real estate in the city of Montgomery from one Knox, to whom $9,000 of the purchase money was due at the death of W. E. After the purchase the firm used a store-house on this real estate " as a business stand," in which they carried on business as grocers and commission merchants. The unpaid balance due for the purchase was paid by R. H. with partnership assets after the death of W. E., the debt for this balance being evidenced by " an ordinary negotiable note, signed R. H. & W. E. Offutt." Before the filing of the bill R. H. had been removed, and in his stead A. J. Noble appointed administrator with the will annexed, R. H. having also sold his interest in the real estate to one Waggoner, from whom Ray purchased under circumstances which it is admitted made him a *bona fide* purchaser for value and without notice. A partition of the real estate had also been made between Ray on the one hand, and the administrator Noble and the devisees of Wm. E.; R. H. having surrendered all claim, whether as heir or partner, to the real estate partitioned to W. E. At the date of the filing of the bill, the real estate was in the possession of Noble as administrator, unincumbered with debt, Noble having received rents, and was claimed by two of the devisees, the others having assigned their interest to them.

Scott, in April and the early part of May, 1860, had shipped in his own name from Lexington, Kentucky, certain consignments of bagging, rope and twine, for sale on commission. On May 4th, 1860, a small payment had been made on these consignments, and on January 1st, 1861, R. H. gave Scott a note signed in the firm name for $1,045.92 in settlement of part of the consignments, no account being stated as to the balance. The evidence as to the time and by whom these shipments were received is fully stated in the opinion, and need not be here repeated.

The bill alleges that separate shipments were made by Scott and by Hamilton. The proof, however, shows that the shipments were all made in Scott's name, but that Hamilton had an undisclosed interest in one of them which was transferred to Scott. It was urged in this court that this was such a variance between the allegations and proof as to entitle appellants to a reversal. The point does not appear to have been made in the chancery court.

Shortly after the note was given the late war commenced, and as Offutt continued to reside at the South, and Scott and Hamilton resided in Kentucky, they had no further communication about the matter until they met in New Orleans in February, 1866, when R. H. Offutt took up the original note for $1,045.94, giving instead two notes, one to Hamilton and one to Scott, the respective notes being for their respective interests in the original note. These notes were given simply in renewal of the original, were signed "R. H. & W. E. Offutt," and were not intended by any of the parties as a release to the firm. Shortly after this R. H. rendered an account of sales of the consignments not before accounted for, showing a balance due Scott of $2,347.20. R. H., as surviving partner, had possession of the assets of the firm, and wound up its business.

In July, 1868, Scott having purchased the note given to Hamilton, brought suit on the account and notes heretofore mentioned, against R. H., in the circuit court of Montgomery, recovering judgment, on the 1st of February, 1870, for $4,952.24. Execution was duly issued on this judgment, and returned "no property found." The bill also alleges that R. H. is insolvent.

On the 18th of March, 1870, Scott filed his bill praying that an account be stated, &c., and that the real estate mentioned in the bill be subjected to and sold for the payment of the amount found to be due upon the judgment.

R. H. Offutt, Noble the administrator, &c., and the four devisees and heirs at law of Wm. E., and Ray, the purchaser of R. H.'s interest, were made parties defendant, and answered the bill.

The respondents objected to the relief prayed for, and

Offutt et al. v. Scott.

set up in their answer—1st, That the indebtedness mentioned in the bill, as shown by the bill itself, occurred after, and not before the death of Wm. E. 2d, That the judgment is against R. H. individually, and not against him as surviving partner of the firm of R. H. & W. E. Offutt. 3d, That before the filing of the bill R. H. had sold his interest in the real estate, and that the real estate had been partitioned between Ray on the one hand and the heirs and devisees and administrator of W. E. Offutt on the other, and that the portion now held by the administrator was assets of the estate of Wm. E., and subject only to payment of the debts of Wm. E., and belonging to the heirs and devisees of Wm. E. 4th, That the estate of Wm. E. is not in any way indebted to complainant, or liable to pay his demand; that the claim set up was never presented, as required by law, or to any personal representative of W. E. within eighteen months after grant of letters of administration. 5th, That the claims against the firm were open accounts at the death of Wm. E., and the same were barred by the statute of limitations of three years before the bill was filed, or any proceeding commenced to enforce the same against the estate of Wm. E.

The cause was submitted for decree on bill, answers and proof. The chancellor overruled the plea of the statute of limitations and non-claims, and decreed that complainant was entitled to the relief prayed against the real estate in the hands of the administrator to the extent of one half of the amount of partnership funds used by R. H., the survivor, in paying for the same, with interest on that amount from the time the administrator commenced receiving the rents and profits thereof, &c., and dismissed the bill as to respondent Ray.

The defendants appeal, and assign the decree of the chancellor as error.

WATTS & TROY, for appellants.—There is a variance between the allegations and the proof, which must necessarily work a reversal of the case. The bill alleges separate shipments of bagging, &c. by Scott and by Hamilton; the

proof showed joint shipments, in which they were both ·interested.—Shep. Dig. p. 252.

2. It does not appear that complainant has exhausted his remedy at law. ·

3. A court of equity will not take jurisdiction to subject equitable assets of a debtor to the payment of a debt, until all remedy at law has been exhausted, unless some statute authorizes such proceeding by a simple contract creditor, or unless such simple contract creditor can establish a *trust* in his favor.—See Reavis' Dig. p. 351, §§ 207, 208 ; 11 Ala. 437 ; 14 Ala. 198.)

4. In the case under consideration, it is alleged that complainants' claims were debts of R. H. & W. E. Offutt *as partners ;* that one of the partners, W. E. Offutt, died about the first of September, 1860. The bill must be construed most strongly against complainant. It must therefore be held that W. E. Offutt died not later than the first of September, 1860. The partnership was dissolved by his death. R. H. Offutt became the executor of W. E. Offutt shortly after his death. The bill shows that a suit was brought by complainant against R. H. Offutt as an *individual*, on notes he had executed long after the death of W. E. Offutt, and a judgment was obtained in *this suit*, and that execution on it was regularly returned " No property found." And there is no allegation that the partnership effects liable *at law* have ever been exhausted. It is averred that R. H. Offutt was insolvent at the time of filing the bill ; but there is no allegation that the *partnership* was insolvent. It thus appears that so far as the *partnership* is concerned the claims of the complainant are merely *simple contract* debts.

It is alleged that a part of the money of the firm was used by the surviving partner to pay for land, which the bill shows was the individual property of Wm. E. Offutt. And it is this money so invested by R. H. Offutt, the surviving partner, which is sought to be subjected to the payment of an alleged partnership debt. The bill shows that the real estate sought to be subjected in part to the payment of this alleged partnership debt, descended, on the

death of W. E. Offutt, to his heirs, and it is now in the possession of his heirs.

Now, conceding that complainant's debt was one against the partnership, and that W. E. Offutt was liable to pay it, this land now in the possession of the heirs and devisees, cannot be subjected to the payment of this debt, unless the complainant has exhausted all remedy at law against the personal representatives *as such,* of W. E. Offutt, or unless it is shown that the personal representative and his sureties are insolvent.—*Grant v. Reed*, 24 Texas, 46 ; see *Pike v. Searcy et al.,* 4 Porter, 52 ; *Darrington v. Borland,* 3 Porter, 10 ; *Ledyard v. Johnston,* 16 Ala. 548.

There is no allegation in this bill that any remedy at law against the estate of W. E. Offutt has ever been attempted. Under section 2538 of the Revised Code of Alabama there was ample remedy at law against the estate.—See this statute construed in *Waldron, Isley & Co. v. Simmons et al.,* 28 Ala. 629.

Indeed, it appears on the face of the bill that all remedy against it is barred by the statutes of limitations and non-claim both.

It is not necessary to plead statute of limitations, or that of non-claim. The bill on its face must show that the remedy is not barred.—2 Ala. 555 ; 41 Ala. 344.

5. The suit against R. H. Offutt was not against him for a partnership debt. It was founded on notes made by him the 1st of January, 1866, and on account stated January 1st, 1866, more than five years after the dissolution of the partnership by the death of W. E. Offutt.

The declarations of R. H. Offutt, made *after* the dissolution of the partnership, do not bind the estate of the deceased partner, nor can his declarations or acts subsequent to the dissolution be evidence against the estate of W. E. Offutt.—12 Ala. 714; 17 Ala. 145; 37 Ala. 436; 41 Ala. 222 ; 9 S. & M. 290.

6. This bill shows that letters testamentary on the estate of W. E. Offutt were granted to R. H. Offutt shortly after the death of W. E. Offutt. He died as early as 1st September, 1860. The bill seeks to subject property belong-

ing to the estate of W. E. Offutt in the hands of his heirs and administrator *de bonis non.* The bill, answers and proofs show that R. H. Offutt transferred to the defendants, C. L. Offutt and Mrs. Sweitzer, all the interest he had in said real estate, and that said real estate, which had, at one time, been owned jointly as tenants in common by said R. H. Offutt and W. E. Offutt, had been divided between the estate of W. E. Offutt and Ray, the purchaser and owner of R. H. Offutt's interest.

Now a material question arises, whether the complainant, if he really be a partnership creditor, has a superior equity to the personal representatives and heirs of W. E. Offutt.

The partnership creditors as such have no lien on the partnership property proper until they have obtained execution at law against such effects, and thus established an execution lien.—See Story on Partnership, § 358, and particularly on p. 509; *Reese & Hayden v. Bradford,* 13 Ala. 836.

The lien, which is sometimes spoken of as the equity or lien of the creditor, is in fact that of the surviving partners, to enable them to pay the partnership debts and to reimburse themselves for advances made in and about the partnership business.—See authorities, *supra.*

The only right of the partnership creditors is to be subrogated to this lien of the surviving partners, and this equity of the partnership creditors is to be worked out (as it is quaintly said) through the equity of the surviving partners.

Whenever the surviving partners have, by any act performed in good faith, lost their lien, the supposed equity of the creditors is gone.—See authorities, *supra,* and *Kimball v. Thompson,* 13 Mitc. 283; *Coffin v. McCullough,* 30 Ala. 107.

The last payment of $9,000 became due, and was paid after the death of W. E. Offutt. One-half of this balance was the individual debt of R. H. and the other was the individual debt of W. E. R. H. was the surviving partner, and was the executor of the estate of W. E. Offutt,

He paid this balance, thus paying $4,500 for and on account of the estate of W. E. Offutt. Now, concede that it is clearly proven that R. H. Offutt paid this sum out of the assets of the partnership, what follows? It is simply using $9,000 of partnership money, in which he and his brother were equally interested, to pay his individual debt and that of his brother's estate. Did he in good faith make this payment? Did he thus voluntarily and in good faith convert the partnership assets, which were joint funds, into the separate property of each? If he did this, he, R. H. Offutt, could never afterwards assert any lien on the assets of the partnership thus voluntarily and in good faith invested in real estate belonging to his brother's estate.—*Coffin v. McCullough*, 30 Ala. 107 ; see the authorities before cited.

The creditors' *quasi* lien, to be worked out through the surviving partner on partnership assets, never exists until the *dissolution* and *insolvency* of the partnership. And any assignment of partnership assets, made *bona fide* before said dissolution and insolvency, would convert the joint, *i. e.* partnership property, into separate property, and such conversion removes it from the operation of the lien.—See note *g* to p. 346, Parsons on Partnership, and the long list of authorities cited therein.

If R. H. Offutt could not file his bill against his brother's estate, to assert a lien on the joint assets so converted into separate property—if he could not file his bill against the real estate in the hands of his brother's heirs and personal representatives, and have a lien and trust declared on it, the creditors of the partnership, who must work out their equity through him, cannot assert any right to relief against said real estate.

He could not do so, because at the time he did so there is no pretense that the partnership was insolvent; and because he voluntarily paid an individual debt of his brother, and because the payment on account of his brother's estate was not any advance made by him on account of partnership transactions.

At the time R. H. Offutt paid the money to Knox there

is no pretense that the partnership was insolvent. At the time R. H. Offutt paid Knox the balance due for the real estate, the partnership was amply solvent. This assignment to his brother's estate was *bona fide*, and converted what had been joint assets of the partnership into the separate property of W. E. Offutt's estate. And this assignment or conversion, having been made whilst the partnership was solvent, removed the property thus converted or assigned from the operation of every lien of the surviving partner or of the creditor. The lien never attached, because the assets had become the separate property of W. E. Offutt's estate before the insolvency of the partnership. .See *Coffin v. McCullough*, 30 Ala., *supra*, and other authorities, *supra*.

It may be said that such result would work injustice to the partnership creditors. But this is only seemingly so; really there is no injustice. The estate of the deceased partner is liable to the partnership creditor, either in equity or at law. In Alabama it is liable both in law and equity. See § 2538 of Revised Code; *Waldron, Isley & Co. v. Simmons*, 28 Ala. 629.

It is not alleged or pretended that the estate of W. E. Offutt was or is insolvent.

If the complainant has lost his right to proceed directly against the estate of W. E. Offutt, he has lost it by his own neglect in failing to present his claim within the time required by law, and by failing to·sue the estate either in law or equity until the statute of limitations completed a bar.

This bill is not framed with a view to assert or claim any personal liability against the estate of W. E. Offutt. It is a proceeding *in rem*, and no decree *in personam* could be rendered against the administrator of W. E. Offutt under it, even if it did not show on its face that such relief is barred by the statutes of both limitations and non-claim.

II. The equity of complainant's bill, and his right to have any decree, are dependent and predicated upon the establishment of three propositions:

1st. That his claim is a partnership debt.

2d. That the real estate sought to be condemned is either in part or whole the property of the partnership, or that the estate holds in trust for the partnership creditor the $4,500 of partnership assets used by the surviving partner in paying for the real estate ; and

3d. That his partnership claim cannot be collected, and could not have been collected, by remedy at law, without subjecting this land to its payment.

Do the pleadings and proofs show that the complainant's claim is a partnership liability?

R. H. Offutt, one R. B. Hamilton and Scott are the only witnesses examined by complainant.

Scott and Hamilton swear that they shipped in May, 1860, certain pieces of bagging, to-be sold on commission. Neither Scott nor Hamilton swear when this bagging was received, nor whether it was received by the firm during the existence of the partnership, viz., before the death of W. E. Offutt, on or before the first of September, 1860. The time of shipment makes but little matter, except so far as it may tend to show that the bagging was received by the firm before its dissolution by the death of W. E. Offutt. If the bagging was not received before the death of Wm. E., no liability arising out of the sale of the bagging could be a partnership liability.

The only evidence as to the time when the bagging was received in Montgomery is that of R. H. Offutt. He swears that it was received in the fall of 1860. If this be correct (and he is the only witness who testifies as to the time of the receipt of the bagging), then the bagging, though shipped in May, was never received in the lifetime of W. E. Offutt, and consequently was not received in Montgomery while the partnership was subsisting.

It matters not what has been done by R. H. Offutt. Or he may have supposed that, as the bagging was shipped to the firm, it was a partnership matter. But his opinion, or his act in selling, or in making the note of $1,045 04 on the 1st of January, 1861, four months after the dissolution of the partnership, and signing the firm name to it, could not legally make it a partnership transaction. He had no

right, after the dissolution, to create any new liability on the firm, and could not renew in the firm name the obligations of the partnership.—See 12 Ala. 714; 17 Ala. 145; 37 Ala. 436; 41 Ala. 222.

On the foregoing facts, the claim of the complainant, so far at least as the $2,347 20 account is concerned, ought not to be sustained even against R. H. Offutt.

But suppose this bagging was received before the death of W. E. Offutt and was not sold, but remained on hand at his death, unimpaired by any act of either partner, could the firm be held liable for its value, or for the proceeds of a sale which took place after the dissolution, by death, of the partnership? The death of bailor or bailee puts an end to the relation of bailor and bailee, principal and factor, as well as that of partnership.—See Story on Bailment, § 202; Story on Agency, § 490; Merrick's Estate, 8; Watts & Serg. 402. If the bagging remained on the first of September, 1860, unsold and uninjured, could not Scott have directed the bagging to be reshipped to him, or could he not have directed the surviving partner to deliver to some other person? He certainly could. So far as the proof shows, no advances had been made by R. H. & W. E. Offutt before the death of W. E. Offutt. They therefore had no lien or special property therein on the death of W. E. Offutt. The bagging was therefore subject to the order of the bailor.—See Merrick's Estate, 8; Watts & Serg. 402, and authorities, *supra.*

If a bailor ship goods to two or more partners to be sold on commission, and one die before anything is done, this ends the relation. The bailees have a personal trust to perform, and this trust cannot legally be performed by less than the whole, without the consent, express or implied, of the bailor.—See Story on Bailments, § 202; Story on Agency, §§ 488, 490.

ELMORE & GUNTER, *contra.*—1. Parsons on Partnership, p. 342, *et seq.*, says: "There are two entirely distinct, and indeed opposite ways of viewing a commercial partnership. One of them regards it as a modified tenancy in common;

the other, as a modified corporation.  *  *  *  Exactly . so far as a partnership is a tenancy in common, it has no existence as a body by itself, and has no property, and no debts or creditors.  Just so far as it is a corporation, it has an independent existence, and its own property, and its own debts."

The principle, now firmly established, that partnership assets are to be separately administered, and that partnership liabilities are preferred claims, (Emanuel v. Bird, 19 Ala. 596; Parsons on Part. 345, note f,) is founded directly on the idea of "an independent existence in the partnership."—Parsons on Part. 344.

A creditor of a corporation, or of an individual, or of a partnership, has a natural equity to have all the assets of the debtor subjected to the payment of his debt.

Neither is this right dependent upon a dissolution and insolvency, for, as stated by Mr. Parsons, it is difficult to imagine how either could create a lien or right; but is a right arising with the creation of the debt itself.—Parsons on Part. 342–50; Coll. on Part. § 578.

2. The *gravamen* of this bill is the claim founded on the judgment, and the matters antecedent to it are averred by way of inducement only, to show the character of the debt on which the judgment is rendered.  It is only in the statement of material allegations that a variance can be taken advantage of.—*Paulding v. Lee & Ivey*, 20 Ala. 768–9. And objections curable by amendment should not be allowed in the appellate court unless taken below.—*Andrews v. Hobson*, 23 Ala. 232.

3. This is not a proceeding against any persons *as distributees* to make them refund assets received from their intestate's representative, as such, for the purpose of paying a debt of the deceased.  The bill is to subject assets belonging to R. H., as survivor of the firm of R. H. & W. E. Offutt, which have passed, contrary to law, into the hands of third persons, who are volunteers.  The grounds of equitable jurisdiction are a judgment and return of no property against said R. H., and his insolvency, and that the assets we seek to subject can not be reached at law.

The mere fact that the *volunteers* happen to be distributees of the estate of the deceased partner does not give them any right to stand in the way of the full assertion of our remedy for the collection of our debt out of the survivor and the partnership assets.

The estate is in the hands of the administrator; so the principle on page 52 of 4th Porter, and 16 Ala. 548, can not be invoked.

4. The judgment against any survivor is always against him *individually.* There is no other way of rendering judgment. And it is a well established rule of pleading, that "there is not any occasion to make any distinction in the declaration on account of the sources of the debts."—See the law fully on this point in 4 Robinson's Practice, 500, 501; 1 Chit. Pl. 50. The partnership, at law, on the death of William E. was merged in R. H., the survivor; the assets and debts became his, at law. And a judgment against him individually, after the death of the other member of the firm, is the only judgment which could be rendered at law which would enable the creditor to reach partnership assets. But, of course, in the administration of the partnership assets it would be competent, especially in a court of equity, to look behind the judgment to see upon what it is based.

5. Admitting that R. H. Offutt had turned over to the heirs of his brother, free from any claim by him, the real estate mentioned, would such an assignment, without a valuable consideration, and even with a valuable consideration, if made with the known intent to prefer individual to partnership creditors, or to defeat partnership creditors, be sufficient to prevent our following it? It is admitted that any *bona fide* transfer of partnership property before the accrual of a lien will prevent the partnership creditor from following it. Such is the case of *Coffin v. McCullough,* 30 Ala. 107. If this were not so, a partnership could never deal with its property until every debt had been paid.

But there never can be a *bona fide* transfer, or assignment, without a sufficient legal consideration to make the transferee a *purchaser* in the eye of the law. And a per-

son can never be a *bona fide* purchaser who has notice, actual or constructive, of the use of trust funds for an improper purpose. If this were not so, partnership creditors, who gave credit on the faith of the firm assets, would generally find before rendition of judgment that there had been a *bona fide* division or diversion of the firm property. The rule is, as stated in *Coster v. Bank of Georgia*, 24 Ala. 59, that the property of the firm is pledged in equity for the payment of the debts of the firm, and, as mentioned in Parsons on Partnership, 353, that "the partner himself is wholly without the right of appropriating to himself in severalty anything whatever which belongs to the common stock. All the partners together can not do it, if it be needed for the payment of the debts."

It would be most unreasonable to hold, that a partnership creditor is necessarily to be concluded by the act of the partners, one, or all; and that they can always raise an estoppel against him by raising one against themselves. As a partnership creditor, we do not claim that we have any lien until our lien is reduced to judgment. But we say that our rights against a partnership are the same as those against an individual, or against a corporation; in either of which cases we are permitted to follow the assets of the debtor until the equity of some *bona fide* holder for value shuts us off. And in the absence of such *bona fide* disposition for value in the due course of trade, no estoppel against the debtor can hinder the creditor. It is an every day occurrence for separate creditors of partners, who have received payment out of firm assets, to be made to refund. And how can the estate of a deceased partner stand in any better position? Can any one pretend, that notwithstanding the law in the administration of partnership assets gives a preference to partnership creditors, a devotion of the firm assets by the survivor to the payment of individual debts will be a lawful administration? The incorrectness of the theory that creditors' rights have to be worked out through the lien of partners, is fully shown in Parsons on Partnership, page 342, *et seq*.

The appellants contend that the judgment is rendered

on a note given, and an account stated, after the death of William E., and that, *therefore*, it is no charge against the firm assets in the hands of the survivor.

We take it to be clear and undisputed, that if on our judgment firm assets, in the hands of the survivor, could lawfully be taken in satisfaction, the character of the judgment is such that the same assets may be followed where there has been a mal-administration of them, as in this case.

During the existence of the partnership, or after dissolution, otherwise than by death, a creditor, to get at the partnership assets, must sue all the members of the firm, (we speak of rules at the common law). The judgment rendered is conclusive upon all, and is a personal charge upon each member, and upon his estate. The creditor can have either joint or several executions, which can be levied on joint or several property.—*Ex parte Ruffin*, 6 Vesey, 126.

The authority to bind the firm *as persons*, and the *firm assets*, after dissolution, except in case of survivorship, is the same; for, the firm assets can not be reached unless all the partners are sued, and a judgment obtained is personally binding upon all. In a suit against a partnership after dissolution, a judgment could undoubtedly be obtained if the plaintiff proved an admission by each defendant that the debt was correct; for every admission by a person, against his interest, is evidence against him, and, each one having concluded himself, all the members are bound in the same manner as if they had each joined in a new note for the partnership liability, which still remains a firm debt.—16 Ala. 453; 31 Ala. 230.

So, that though after a dissolution the power of each partner to bind the other members and their estates by admissions is at an end, each member may, nevertheless, conclude himself and the interest he represents in the partnership assets. And if all liable to be sued, severally admit the same account, or sign a note, after dissolution, suit may be brought thereon, and the judgment can be satisfied out of firm assets.—31 Ala. 230.

In case of a dissolution by death, the survivor is, in law,

not only the representative of his own interest in the firm, but also of the entire partnership assets.—*Marlow v. Calvert*, 18 Ala. 67 ; Par. on Part. 440–41.

The creditor seeking to charge the firm assets has only to deal with him, and with him only as an individual. The whole legal liability and all of the assets of the firm at law belong to him ; and the judgment against him for firm debts is precisely in the form of one on any debt in which the partnership never was interested. Now, whatever is evidence against him, he being the only possible party to the suit, of course, is sufficient for the pleader. Any admission, whether written or verbal, does not change or vary the liability, for it is *sole* before and afterwards ; and any judgment that may be rendered in no way concludes the estate of the deceased as to the character of the debt, or imposes on it any personal liability. For, if the survivor pays a debt which was in fact not a partnership liability, he will not be allowed a credit for it on the settlement of the accounts ; and if he suffers a judgment, and firm assets are sought to be charged in the hands of the representative of the deceased, the creditor is bound to show *aliunde* that it is founded on a partnership liability.

It is clear, therefore, that the reason of the rule, above stated, that the several partners, after dissolution, have no authority to bind the estates and persons of the other members, has no application in the case of a survivor. *Cessante ratione, cessat ipsa lex.*

The absurdity of the position, that a survivor can not state an account, is obvious ; for every account must be stated before it is paid, and if the former power is taken away, the latter is gone. And why should the survivor be required to make the creditor, at great expense, to be paid in the end by the partnership assets, litigate and establish a claim known and admitted to be correct, when, no matter how fiercely contested, the judgment would only be binding upon the parties, to-wit : the creditor and the survivor—there being no law providing for the representative of the deceased taking part in such suit.

The confusion in this matter arises from not keeping

clearly in the mind the distinction between the debt and the evidence of the debt; and from not remembering that the proceedings between the creditor and the survivor are, as to the representatives of the deceased partners, *res inter alios acta*. It is to debts, and not to the evidences of them, that rights appertain, and these rights are not lost on account of the difficulties in showing the identity of the debts.

And it is absurd to say that the creditor's rights, or the pleadings against the survivor, are to be determined, in any manner, by a thought of the representative of the deceased partner, who is not a party, and is not concluded in any manner by the judgment, or by its payment. The only way in which a creditor can reach the partnership assets, after a dissolution by death, is to litigate with the survivor, who, in the absence of proceedings restraining or removing him from authority, is held out to the world as the proper party to deal with. His position is different from that of an ordinary trustee; it is not necessary to declare against him except as an individual, and the judgment and execution are against him merely as an individual. The creditor's right of action, by the death of one partner, has become sole against the survivor. To say, now, that the survivor, who has been invested with this sole authority to settle the business, may pay debts, but can not admit them to be due; and that assets, in equity pledged for the payment of the debt, are not liable for the payment of the judgment merging the partnership liability, because, in one of the stages of the debt, between an open account against the survivor, and a judgment against the survivor, it had the shape of an account stated by the survivor, or of a due bill given by the survivor, or because the pleader forgot to declare as well on the open account as on the due bill, seems very ridiculous, to say the least.

It can make no difference to any one, but the survivor, upon what evidence the judgment is rendered against him. If it merges a partnership liability and is against the only person who could have been sued, and is in the only form

authorized by law, there can be no reason for impeding the creditor in his efforts to get at assets in equity pledged for his payment.

7. The question, whether or not this judgment is entitled to have in equity a dividend as a partnership liability, is to be determined by the nature and origin of the claim. If the law had provided any special form of pleadings in suits against survivors of partnerships, and the form of a judgment, as in case of administrators, directing a levy of particular assets, then the judgment would, in the absence of frau l, be as conclusive of its character on the survivor and the partnership assets, as is a judgment against an administrator that it is a charge on the assets of the estate. But the judgment against the survivor is always personal, and only authorizes an execution *de bonis propriis*, in which character, at law, the goods of the partnership are held. It is only in equity that any distinction is taken between the assets of the firm in the hands of the survivor and his individual property. And the only purpose of ever mentioning in a declaration against a survivor, that another person, "since deceased," was concerned in the transaction, is to enable the defendant to know with greater certainty what claim he is to defend.—1 Bar. & Ald. 29.

The liability of the survivor is sole, and the judgment is, and can only be, against him individually.

In the absence of fraud, however, a judgment against a survivor can no more be impeached by the representatives of the deceased partner on account of the nature of the proof offered on the trial, than can a judgment against an administrator be required to be re-established to the satisfaction of the distributees.

But, when a judgment creditor claims that he has an equity against particular assets, he must, in the case of a survivor, be prepared to show *aliunde* that his debt belonged to the class to which that right appertains.

The question relates merely to the nature, origin and consideration of the debt, in order that the court may class it; the correctness of the judgment itself, in a direct proceeding for its enforcement, can not be questioned by any

person, in the absence of fraud. Admitting the judgment to have been properly rendered, and upon ample proof, the inquiry is confined to the single point, whether the plaintiff's claim originated in partnership transactions, or not.

The respondents admit that the judgment is upon the claims mentioned in the bill of complaint. The claims mentioned are those arising out of the shipment of goods by the plaintiff, in the early part of 1860, from Lexington, Kentucky, to the firm of R. H. & W. E. Offutt, at Montgomery, Alabama. There had been previous dealings of a similar character, and the character of them is indicated, in some degree, by the fact that there was a cash payment on the consignment. Offutt states that something had been paid on the goods. And Scott states the date and the amount of the payment, and the execution of a note by the firm; thus showing privity by the firm and its approval of the transaction, long before the death of William E. Offutt.

The idea that goods shipped in April from Lexington, Kentucky, to Montgomery, Alabama, did not reach their destination until the fall of the year is sufficient to show the loose manner in which the word "fall" is used by the witness R. H. Offutt. It is evident, however, from the time of the shipment, and the general statements of R. H. Offutt's deposition, that the goods were received before the death of William E. But it is not necessary that such should have been the case; for the inception of the contract, and the transfer of the possession, does not date from the reception of the goods by the consignee, but from the shipment, if made in pursuance of an agreement, or, from approval and ratification of it, if made without previous agreement.—3 Par. on Contr. 261, note w, and authorities there cited.

The depositions of Scott, Hamilton, and Offutt, all show that the transaction was with the firm, and that all parties interested so regarded it. The renewal of the note for $1,045.94 in 1866, by the survivor, is even signed in the firm name. It is plain that the goods were sent to the firm; that the latter assented to the same, and acknowledged its

liability therefor by making advances thereon, and under-taking the sale of the goods; and, in the absence of all evidence, the court is authorized to presume consent to a general consignment.—*Tompkins v. Wheeler*, 16 Pet. 106 ; *Brooks v. Marbury*, 11 Wheat. 96.

The estates of individuals are not relieved by death from liability for continuing contracts.—*Moore v. Wallis et als.*, 18 Ala. 458. And the survivors of a partnership have authority, and are in law bound, to complete in the name of the firm all unfinished business and unexecuted contracts. *Calvert v. Marlow*, 18 Ala. 67 ; Par. on Part. pp. 388–89, 392-3-4, 440–1; Coll. on Part. § 546.

On page 594 of Parsons on Partnership, above cited, it is said : "No dissolution of any kind affects the rights of third parties who have had dealings with the partnership, without their consent. This is a universal rule, without any exception whatever." And on page 392 it is said, the settling partner may, after dissolution, sell goods consigned to the firm before dissolution—citing *Heberton v. Jepherson*, (10 Barr, 124,) which more than covers this case.

PECK, C. J.—The first question that seems to arise on this record is, how is the real estate purchased of Knox and wife by Richard H. and William E. Offutt to be re-garded? Did it belong to these parties as individuals, as tenants in common, or did it belong to them as partners, and, therefore, in equity subject to the payment of the partnership debts?

The rule undoubtedly is, that real estate purchased for partnership purposes, and paid for with partnership funds, becomes partnership property, and as far as the creditors of the firm are concerned, and for the payment of their debts, it is, in equity, to be regarded and treated as be-longing to the partnership, as assets of the firm. It is immaterial to whom the legal title may be conveyed—whether to the partners by name, as individuals, or to one of them, or to a third person.—Parsons on Partnership, 364.

In the case of *Lang's Heirs v. Waring*, 25 Ala. 639, the court say : "After much vascillation by the English courts,

the doctrine may now, perhaps, be considered as settled, that, unless there is something in the articles of copartnership, or some agreement by the parties, real estate purchased with partnership funds, for partnership purposes, is, in a court of equity, converted and treated as personalty, and, therefore, goes to the personal representatives, and not to the heir of the deceased partner." They further say, "While the decisions of American courts generally concur in affirming that such estate is, in equity, chargeable with the debts of the partnership, and with any balance there may be due from one partner to another, there is much conflict among them as to whether the surplus, in case of the death of a partner, shall descend to the heir, as real estate, or go to the personal representative for distribution."—See, also, Story on Partnership, § 93.

It is unnecessary for us to resolve the doubt that seems to exist as to what shall be done in such a case with the surplus that may remain after the payment of the partnership debts, whether it shall be regarded as real or personal property. It seems to us, however, that the better opinion is, that it is to be treated as real property, and to be disposed of as such.

By looking at the deed of Knox and wife, a copy of which is made an exhibit to the complainant's bill, we see that this real estate consists of two lots in the city of Montgomery, and was purchased on the 24th of March, in the year 1859, at the price of $30,000, and was conveyed to said Richard H. Offutt and William E. Offutt; but at the time of the purchase said parties were, and for some time before had been partners, doing a grocery and commission business in said city of Montgomery, under the firm name of R. H. & W. E. Offutt; that said partnership continued to the 1st of September, 1860, when it was dissolved by the death of said William E. Offutt; that before this event all the purchase money had been paid except $9,000, and for that sum the said Knox held the note of said firm, which was afterwards paid by the surviving partner, R. H. Offutt.

There is no positive evidence for what purpose this real

estate was purchased, or with what funds it was paid for. The bill states there was a store-house on said premises, which, after the purchase, was occupied by said firm as a *business stand;* and this is admitted by the answer of the respondents, Charles L. Offutt, L. A. R. Switzer, and the administrator *de bonis non,* &c., of said William E. Offutt, deceased, Andrew J. Noble. It seems to us, therefore, the fair inference or presumption is, that this property was purchased for partnership purposes, and, also, that it was paid for out of the partnership funds. If not, why had the note of the firm been given for the $9,000 that remained unpaid at the death of said W. E. Offutt? The said R. H. Offutt, who was examined as a witness, says "the purchase was made partly for cash and partly on a credit. The last of $9,000 remained unpaid at the time of the death of William E. Offutt, and was subsequently paid to William Knox, or his order. I do not recollect at what time it was paid. The claim was an ordinary negotiable note, signed by R. H. & W. E. Offutt." It does not appear that these parties had any property outside of the business of the firm, or that did not belong to the firm.

If this is a correct view of the transaction, as we think it is, then, on the death of the said W. E. Offutt, in equity it vested, with all the other partnership property, in the surviving partner, R. H. Offutt, who thereby became entitled to the exclusive right of possession and management of the same, but only for the purpose of closing up the partnership business, and paying the partnership debts, &c. In equity, he held the property in trust, first, for the payment of the partnership debts, and then for those who might be entitled to what remained, whether as heirs or personal representatives of the deceased partner, or otherwise.—Parsons on Part. 364, 440.

Was the debt of the complainant upon which he recovered his judgment against the said R. H. Offutt, the debt of said firm of R. H. & W. E. Offutt, or the individual debt of said R. H. Offutt? and if the debt of said firm, had the complainant exhausted his remedy at law against said firm before the filing of this bill?

1st. The bill states that said debt grew out of shipments of bagging, rope and twine, made in Lexington, Kentucky, in the latter part of April and the early part of May, 1860, which were consigned to said firm, in Montgomery, Alabama, to be sold on account of the shippers; that one R. B. Hamilton made one of said shipments, and that the other shipments were made by complainant.

The evidence, however, shows they were all made in the name of the complainant, but that said Hamilton had some interest therein, which was afterwards assigned to complainant.

These shipments, if they were received by said firm before the death of said W. E. Offutt, whether sold in whole or in part, or remaining on hand at the time of his death, constituted a legitimate part of the business of said firm, and, therefore, for the purpose of winding up the business of the firm, might be sold by the said R. H. Offutt, as surviving partner, and when sold the claim of the complainant on account thereof was properly against the said firm, and not against the survivor as an individual; and being a claim against the firm, it was the duty of the survivor to render an account of the same to the complainant, and after deducting the usual commissions, or such as might have been agreed upon between the parties, to have paid the remainder to the complainant. A surviving partner, in winding up the business of the firm, is a trustee for all persons interested in the partnership, for the creditors of the firm, for the representatives of the deceased partner, and for himself; and his trust being to wind up the concern, his powers are commensurate with the trust, and, generally, whatever he may do in that behalf is valid, if honestly done, and within the fair scope and purpose of the trust. If there be negligence, delay, misconduct, or gross mistake, equity will interpose to give the proper relief.—Parsons on Part. 440–443.

In the absence of satisfactory evidence to the contrary, it is to be presumed these shipments were received within the time then required to transport such goods from Lexington, Ky., to Montgomery, Ala., in the usual course of

trade and of commercial intercourse between these places; that is, within a reasonable time.    The said R. H. Offutt, in his deposition, says they were received in the fall; but we think it manifest he uses the word "fall" in a very loose manner, and without the intention to convey the meaning that they were, in fact, received after the death of his brother, the said W. E. Offutt, which happened early in September, 1860, after said shipments were made.   In speaking of the dissolution of said firm by the death of said W. E. Offutt, and when it ceased to do business, he ssys it was dissolved by the death of William E. Offutt, that it ceased to do business in the fall of 1860; and speaking of the shipment of said goods, he says, "I recollect the shipment to said firm by said plaintiff; the shipment was received in the fall of 1860." This evidence certainly does not prove the said goods were received after the dissolution of said firm by the death of W. E. Offutt. The time between the date of the last shipment, the 8th day of May, and the death of said W. E. Offutt, if it happened on the 1st day of September, thereafter, is 114 days. It seems to us unreasonable to believe, on such evidence, knowing, as we do, the facilities of transportation between the two places at that time, that 114 days elapsed between the shipment of said goods and their arrival at Montgomery.    We think it far more reasonable to believe they reached their place of destination before the expiration of half that time; therefore, we feel constrained to believe, and hold, that said goods were received by said firm before the death of W. E. Offutt, and that the complainant's debt, arising out of their sale, whether made before or after the dissolution of the firm, must be regarded as the debt of said firm, and, therefore, should be paid out of the assets of the firm.

The character of this indebtedness was not changed, nor the liability of the firm to pay the same was not released, by the settlement that was had between the said R. H. Offutt, as surviving partner, the said Hamilton and the complainant, in New Orleans, in February, 1866.   The said Hamilton, in his deposition, expressly states that such was

not the intention of himself or of the complainant, and the inference is that such was not the intention of said R. H. Offutt, as he then renewed the note that had been given to the complainant on the first day of January, 1861, for $1,045 94, in the name of the firm, on account, in part, of said goods, and then, or shortly afterwards, rendered to complainant an account of sales, showing the firm was indebted in the further sum of $2,347 20.

2d. Had the complainant exhausted his remedy at law against the firm before the filing of this bill? His only remedy at law against the firm was by suit against the surviving partner.—Parsons on Part. 447; *Murray v. Mumford*, 6 Cowen, 441; 1 Ch. Pl. 50. Such suit had been brought, judgment recovered, and an execution on said judgment returned by the sheriff, "no property found." This was the end of his remedy at law against the firm, and it had proved unavailing. The only remedy left was in equity, to subject this real estate to the payment of his judgment. Equity, notwithstanding the form of the conveyance, regards it as the property of the firm, and equity only can appropriate it to the payment of the debts of the firm.

On the part of the respondents, Charles L. Offutt, L. A. R. Switzer, and the administrator *de bonis non*, &c., it is objected, that said suit was brought and the judgment rendered against said R. H. Offutt, not in his character of surviving partner, but as R. H. Offutt individually, and that, therefore, said judgment did not in any way affect the partnership or the partnership property; and as to said respondents, it proved nothing, except its own existence as a judgment against R. H. Offutt, but did not prove the complainant had exhausted his remedy at law against said firm. This objection can not prevail. On the death of said W. E. Offutt, the complainant's only remedy at law against the firm was by suit against the surviving partner. Such a suit may properly be brought against the surviving partner, without any reference to the partnership, or that the defendant is sued as surviving partner, ( *Goelet v. McKinstry*, 1 Johns. Cases, 405; 1 Ch. Pl. 50;) and an execution issued

on a judgment so recovered may be levied, not only on the individual property of the defendant, but also on the personal property of the firm; consequently, the complainant's judgment in this case, and the return of the execution issued on it "no property found," not only proved the complainant had exhausted his remedy at law against the firm, but that the surviving partner himself was insolvent. Neither can the objection of the statutes of non-claim and of limitations, interposed by said respondents, be sustained. The object of the complainant's bill in this behalf is not to obtain a personal decree, or to enforce a liability against the personal representative of the deceased partner, but to enforce the trust alleged to exist in favor of the complainant, as a creditor of the said firm, against the real estate of the partnership, his remedy at law against the firm having been exhausted.

This real estate being a trust fund for the payment of the debts of the firm, and the complainant a creditor of the firm, with his remedy at law exhausted, equity will decree the payment of his debt out of said real estate, whether it be in the possession of the surviving partner, or in the possession of the personal representative or the heirs of the deceased partner. Until the debts of the firm are satisfied, neither the personal representative nor the heirs of the deceased partner have any beneficial interest in the real estate of the partnership; but after they are paid, what is left becomes the property of the surviving partner, and the personal representatives or heirs of the deceased partner discharged of the trust.—Parsons on Part. 372, 441, and note *p*.

The respondent Ray, in his answer, claims that as to the half interest of the surviving partner, R. H. Offutt, in said real estate, he is a *bona fide* purchaser for valuable consideration, without notice, and therefore entitled to hold it against the equity of the complainant, as a creditor of the firm. This, on the hearing, was conceded by the complainant's counsel, and they admitted that, as to said half interest, the complainant was entitled to no relief.

The bill, as to said respondent, was therefore properly

dismissed. As to the remaining half interest, that is, the interest of the estate of the deceased partner, we see no reason why it should not be subjected to the payment of the complainant's debt. The fact that it had passed into the possession of the deceased partner's administrator, with the permission of the surviving partner, and that he and the respondent, R. H. Offutt, as heirs of the said W. E. Offutt, had assigned their interest in the same to the respondents, Charles L. Offutt and A. L. R. Switzer, who are also heirs of said W. E. Offutt, and that a partition had been made between said respondent Ray and said Charles L. Offutt and A. L. R. Switzer, and said administrator, it seems to us, can not defeat the complainant's equity as a creditor of the firm. As far as appears, the said assignment was a mere voluntary assignment, without consideration, and as the surviving partner, from whom the said administrator obtained the possession, held it as a trustee for the creditors of the firm, his possession can stand upon no better equity than the possession of the person from whom he received it, without paying anything for it. It still remains trust property, and equity will appropriate it to the purposes of the trust.

As to the alleged variance between the statements of the bill and the proof, it seems to us said variance is insufficient to prevent a decree in favor of the complainant. It could hardly have operated as a surprise to the respondents, and we do not see how they are prejudiced or injured by it, and if not suprised or injured by it, then it should be regarded as an immaterial variance.—*Lock's Executor v. Palmer*, 26 Ala. 312; *Chapman v. Hamilton*, 19 Ala. 121.

The chancellor decreed that the complainant was entitled to relief, out of the half interest of said real estate not conveyed to said respondent Ray, to the extent of one half of the amount of the partnership assets of $9,000 used by said R. H. Offutt, after the death of said W. E. Offutt, in payment for said real estate, and interest thereon, from the time the administrator, respondent Noble, commenced receiving the rents and profits of the same. The reasons of the chancellor for limiting his decree by the amount of

the assets of the firm paid for said real estate, after the death of said W. E. Offutt, and subjecting the interest of the estate of the deceased partner in the same to one half of that amount only, with interest thereon from the time the administrator commenced receiving the rents and profits on said real estate, are not stated in the opinion; whatever his reasons may have been, it seems to us there is no error in the decree on that account of which the appellants can complain. The complainant certainly gets no more by it than he is entitled to.

The decree is affirmed, at the costs of the appellants.